## JOHN BARRETT v. STATE.

No A-7607.  Opinion Filed Dec. 13, 1930.
Rehearing Denied Jan. 3, 1931.
(293 Pac. 1110.)

Cox & Cox, for plaintiff in error.

The Attorney General, for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the county court of Lincoln county of the crime of unlawful possession of a still, and his punishment fixed by the court at a fine of $100 and imprisonment in the county jail for 30 days.

The evidence of the state was that the officers had a search warrant to search the southeast quarter of section 33, township 17, range 5 east of the Indian meridian, in Lincoln county, and the buildings and grounds within the curtilage of the residence and dwelling house of the defendant, John Barrett.  Upon searching these premises, nothing was found.  Thereupon the officers went to the adjoining quarter section of land, consisting of plowed

fields and woodland and a vacant shack, and, upon approaching this shack, one Brummett came out with a bucket on his arm, on his way to the well. A search of this shack resulted in finding a still in operation with a quantity of mash.

Defendant filed a motion to suppress the evidence for the reason that the same was obtained by an illegal search; there being no warrant authorizing a search of the premises where the still was found. The court heard this motion in the absence of the jury. Brummett testified as follows:

"Q. Mr. Brummett, this was on a different quarter section of land than that John Barrett lives on? A. Yes, sir.

"Q. That land where the officers entered is approximately a mile from John's house? A. Yes, sir.

"Q. Is there a field around the building? A. Yes, sir.

"Q. Is there a pasture on that place, pasture land there? A. Yes, sir.

"Q. Nobody's residence is on there is it, Mr. Brummett? A. Yes, there's a residence house there.

"Q. Whose is it? A. I don't know who it belongs to.

"Q. It's not yours? A. No, sir.

"Q. Not John Barrett's? A. It don't belong to John Barrett; he had it rented.

Q. He wasn't occupying it as a residence? A. Not at that time.

"Q. Where was your residence from this building? A. A mile south.

"Your house and residence was a mile south? A. Yes, sir; a mile and a half south.

"Q. How come you to be there? A. I was there at work.

"Q. What were you doing there? A. I started to get a bucket of water, when the officers came up.

"Q. When did you work, in the daytime or nighttime? A. Nighttime.

"Q. The work you are talking about, Mr. Brummett, was manufacturing liquor, wasn't it? A. Yes, sir.

"Q. That's the only kind of work you done at the house up there? A. Yes, sir."

The officers testified that, while they were in the house where the still was found, defendant came and knocked on the door and said, "Let me in, Daddy"; that, when the door was opened, the defendant came in, having a five-gallon jug and a gallon jug in his hands; that Brummett then said that the still and mash belonged to the defendant, and that he was working for defendant.

This court has repeatedly held that immunity from unreasonable and from illegal search and seizure is a personal one, and does not extend to the unauthorized search of the premises of another. Hunter v. State, 43 Okla. Cr. 138, 277 Pac. 952; Vale v. State, 43 Okla. Cr. 158, 277 Pac. 608.

Under the testimony offered, this was not the home or private residence of the defendant, and he was at the time of the raid engaged in the unlawful manufacture of whisky. Under the facts in this case, he could not raise the question of the sufficiency of the affidavit or search warrant.

The defendant next contends that the court erred in refusing to permit him to show that Bert Buxton, who

made the affidavit for the search warrant, had been convicted and was confined in the county jail at the time the affidavit was made.

Counsel cites no authorities in support of this proposition and we assume there are none. The fact that the person who made the affidavit for the search warrant was confined in the county jail would not disqualify such person, unless said conviction and imprisonment was upon the ground of perjury, and no claim is made that such disqualification existed. Many times the officers are enabled to get information from prisoners in confinement, and this is always legal and legitimate when obtained in the manner provided by law.

The evidence being sufficient to support the verdict of the jury and the errors of law complained of being without merit, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.